**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| LEGEE ADAMS | CIVIL ACTION NO. 15-2637 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a "Motion for Attorneys' Fees and Costs" (Record Document 112) filed by Defendants, the City of Shreveport (the "City"), Cpl. Colin Neville ("Neville"), and Cpl. Stacy Coleman ("Coleman") (collectively the "Defendants"). Defendants seek to recover all attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927. Plaintiff LeGee Adams ("Plaintiff") opposed the motion. See Record Document 114. For the reasons set forth below, the Motion for Attorneys' Fees and Costs is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**[1]

On November 5, 2015, Plaintiff, through his attorneys, filed a Complaint alleging various claims against Defendants. See Record Document 2. Prior to filing the Complaint, Plaintiff's counsel, specifically the attorneys at Romanucci & Blandin, LLC, submitted a preservation letter and a public records request to the City, and the City provided copies of various reports pertaining to Plaintiff's arrest. See Record Document 112-2, Exh. A; Record Document 117-1, Exh. A. Plaintiff's Complaint included the following allegations:

> 13. At that time, OFFICERS NEVILLE and COLEMAN spotted LEGEE ADAMS walking with the other male and, without reasonable suspicion or

---

[1] A more detailed factual background can be found in the Court's Memorandum Ruling on Defendants' Motion for Partial Summary. See Record Document 64. This "Background" section only states the relevant facts to Defendants' instant Motion.

provocation, activated the lights and sirens on their patrol vehicle and accelerated towards LEGEE ADAMS and the other male.

\* \* \*

18. Near or on Prentiss Avenue, OFFICER COLEMAN then approached LEGEE ADAMS, by forcefully and violently grabbing LEGEE ADAMS' shoulder and then throwing LEGEE ADAMS to the ground.

\* \* \*

22. Despite hearing and acknowledging LEGEE ADAMS' statements, and aware that LEGEE ADAMS was not resisting arrest or attempting to flee, OFFICER COLEMAN violently grabbed LEGEE ADAMS' arm, which was then position below LEGEE ADAMS' body in an injured and protective position, and forcefully pulled it behind LEGEE ADAMS' back.

Record Document 2.

Defendants filed an Answer on December 10, 2015, denying the allegations and also raising the affirmative defense of qualified immunity. See Record Document 4. Defendants also affirmatively sought relief in the form of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. See id. Defendants did not file a motion to dismiss Plaintiff's Complaint, but rather, after the completion of discovery, filed a motion for summary judgment seeking dismissal of Plaintiff's claims of false arrest, failure to intervene, the claim of excessive force against Neville, and all claims against the City. See Record Document 21. On August 28, 2017, the Court granted the motion and dismissed all claims except the claim of excessive force against Coleman. See Record Document 64. The findings of fact and law made by the Court in dismissing these claims were based on clearly established law. See id.

Defendants acknowledged that there was a genuine dispute of material fact precluding summary judgment as to the Plaintiff's claims against Coleman, but at all times maintained that such claims were disputed. See Record Document 21 at 7. On Sunday,

March 25, 2018, prior to proceeding to trial, Defendants requested that Plaintiff voluntarily dismiss his claim against Coleman. See Record Document 112-2, Exh. B. Plaintiff refused. On March 26, 2018, a jury trial began on Plaintiff's claims of excessive force against Coleman. On March 27, 2018, the jury returned a unanimous verdict in favor of Coleman. See Record Document 102, 103, 110, 111.

Through the course of litigation, the Court held three (3) scheduling conferences and one (1) pre-trial conference. See Record Documents 14, 36, 75, 95. Prior to filings related to trial, only twenty (20) documents were filed by both parties in this matter. See Record Document 114-3. Plaintiff filed six (6) motions in limine prior to trial and one (1) motion to reconsider the Court's ruling on Plaintiff's motions in limine. At trial, Plaintiff's case in chief on liability consisted of two witnesses and some other evidence, with the entirety of the liability portion lasting only a day and a half. See Record Document 114-2.

Defendants filed the instant Motion for Attorneys' Fees on April 11, 2018, arguing they are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927. See Record Document 112. Plaintiff opposed the motion and asserts he brought no frivolous claims and his course of litigation did not unreasonably and vexatiously multiply the proceedings. See Record Document 114. Defendants have filed a reply. See Record Document 117. Thus, this matter is fully briefed and ripe for decision.

**LAW AND ANALYSIS**

Defendants argue they are the prevailing party with respect to the Section 1983 claims; thus, they maintain they are entitled to recover attorneys' fees and costs under Section 1988(b) and Section 1927, as "Plaintiff's counsel disregarded well-established law and/or advocated claims they either knew or should have known lacked factual and

legal support after a reasonable inquiry, and therefore unreasonably and vexastiously multiplied these proceedings." Record Document 112-1 at 9.

I.  **LEGAL STANDARDS**

   A. **Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988**

Title 42 of the United States Code, Section 1988 provides the Court with discretion to award attorney's fees and costs to the prevailing party in Civil Rights' litigation. See 42 U.S.C. § 1988 (2018). The governing law permits prevailing defendants an award of attorney's fees under section 1988 only upon a finding that the plaintiff's action "was frivolous, unreasonable, or without foundation or *that the plaintiff continued to litigate after it clearly became so.*" Nance v. New Orleans & Baton Rouge Steamship Pilots Ass'n, 2006 WL 2338193, *8 (E.D. La. 2006), quoting Christianburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694 (1978) (emphasis added). In the context of prevailing defendants, Section 1988(b) is meant "to protect defendants from burdensome litigation having no legal or factual basis." Fox v. Vice, 563 U.S. 826, 833, 131 S.Ct. 2205, 2213 (2011) (citation omitted). The Fox court further reasoned:

> [A] defendant may deserve fees even if not all the plaintiff's claims were frivolous.... That remains true when the plaintiff's suit also includes non-frivolous claims. The defendant, of course, is not entitled to any fees arising from these non-frivolous charges. But the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed.

Id. at 834, 131 S.Ct. at 2214 (internal citations omitted). When a plaintiff has asserted both frivolous and non-frivolous claims, a court may grant reasonable attorney's fees to the defendant "only for the costs that the defendant would not have incurred but for the frivolous claims." Id.

In determining whether a suit is frivolous, a district court must focus on the question of whether or not the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful. See Jones, 656 F.2d at 1145. Factors to be considered in making such determination include: "(1) whether the plaintiff established a *prima facie* case, (2) whether the defendant offered to settle, and (3) whether the court held a full trial." Myers v. City of W. Monroe, 211 F.3d 289, 292 (5th Cir. 2000). These factors are "guideposts," and frivolousness must be judged on a case-by-case basis. See Doe v. Silsbee Indep. Sch. Dist., 440 Fed.Appx. 421, 425 (5th Cir. 2011) (per curiam).The Fifth Circuit has "generally affirmed awards of attorney's fees where the plaintiff's civil rights claim lacks a basis in fact or relies on an undisputably meritless legal theory." Id. "Implicit in this approach is the premise that plaintiff knew or should have known the legal or evidentiary deficiencies of his claim." Id.

## II.    ANALYSIS

Here, there is no dispute that Defendants were the prevailing parties based on the Court's August 28, 2017 memorandum ruling granting partial summary judgment in favor of the Defendants and the jury verdict in favor of Coleman.[2] See Record Documents 64, 110, 111. The question thus becomes whether Plaintiff's claims were frivolous, unreasonable, or without foundation, or whether Plaintiff continued to litigate after it clearly became so. The Court will analyze each of Plaintiff's claims to reach its conclusion.

---

[2] All of Plaintiff's claims, except for Plaintiff's excessive force claim against Coleman, were dismissed by the Court's ruling on Defendants' motion for partial summary judgment. See Record Document 65. It is also apparent that Defendants never offered to settle any of Plaintiffs' claims.

### A. False Arrest Claim

Plaintiff and his counsel argued that Neville and Coleman lacked probable cause for the arrest, but that argument was rejected by this Court. As the Court recognized, even under Plaintiff's version of events, the officers had probable cause to arrest him for a violation of City Ordinance § 90-462, which requires pedestrians to walk on the left side of the road facing oncoming traffic, as Plaintiff testified that he was walking on the right side of the road. See Record Document 64 at 13. Accordingly, the Court granted the Defendants' motion for summary judgment and dismissed Plaintiff's false arrest claim. See Record Document 65. As such, Defendants argue this claim was frivolous and without factual or legal support. See Record Document 112-1. Plaintiff asserts that at the time he filed his Complaint, he had proper foundation to present a *prima facie* case for his claim of false arrest. See Record Document 114 at 11.

Plaintiff was arrested for possession of marijuana and resisting arrest; however, the resisting arrest charge was subsequently dropped and Plaintiff was only convicted of possession of marijuana. See Record Document 21-9. Because of this, Plaintiff believes the Heck doctrine did not bar his claim which was "suitably based on Plaintiff's understanding that Defendant Officers effectuated their arrest of Plaintiff without probable cause resulting in charges that were only substantiated after Plaintiff was searched." Record Document 114 at 11. However, the facts of this case and Fifth Circuit jurisprudence make it clear that Plaintiff's false arrest claim was barred by Heck; and, as such, was frivolous.

In Heck v. Humphrey, the Supreme Court held that:

[i]n order to recover damages for ... other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983

plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994). "The Heck analysis ... does not make an inquiry to the validity of the plaintiff's claims, but, rather, considers whether they are inconsistent with a prior criminal conviction." Jenkins v. Town of Vardaman, Miss., 899 F.Supp.2d 526, 532 (N.D. Miss. 2012).

In Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996), the plaintiff, like Plaintiff herein, contended that he was falsely arrested because the arresting officer lacked probable cause to arrest and search him. The plaintiff in Hudson was arrested and found to be in possession of a firearm. The Fifth Circuit determined that the plaintiff's false arrest claim was barred by Heck because,

> If proved Hudson's false arrest claim necessarily would call into question his conviction as a felon in possession of a firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest. See United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995). Moreover, it is improbable that doctrines such as independent source, inevitable discovery and harmless error would permit the introduction of the firearm as evidence in this case: the police discovered the firearm in Hudson's possession when he was knocked from his bike during the burglary arrest and we see no reason reflected in the record before us to believe that the police would have discovered the firearm had they not arrested Hudson for burglary. Thus, because a successful section 1983 action for false arrest on burglary charges necessarily would imply the invalidity of Hudson's conviction as a felon in possession of a firearm, Heck precludes this claim.

Hudson, 98 F.3d at 872.

The instant civil action presented a virtually identical claim. The marijuana seized during the search of Plaintiff led to his conviction on the charge of possession of marijuana. Therefore, his claim of false arrest, if successful, would necessarily call the validity of the conviction into question. The record in this case is clear that if Defendants' stop of Plaintiff, the occurrences surrounding his being taken into custody, and the subsequent search incidental to arrest (which revealed the drugs that were essential to the criminal charge) were determined unconstitutional by this Court in this Section 1983 action, such a holding would cast into doubt or potentially invalidate Plaintiff's drug possession charge.[3] See Birgans v. Louisiana, 2010 WL 2428026, *2-4 (W.D. La. 2010), adopted, 2010 WL 2485958 (W.D. La. 2010), appeal dismissed, 411 Fed. Appx. 717 (5th Cir. 2011); Handshaw v. Hilliard, 2015 WL 5177623, *4 (S.D. Miss. 2015).

Here, Plaintiff pled guilty to possession of marijuana on December 16, 2014, eleven months prior to filing the Complaint. See Record Document 21-9. Plaintiff never alleged that his conviction had been reversed, expunged, invalidated, or called into question by a federal court's issuance of writ of *habeas corpus*; therefore, Plaintiff's false arrest claim was barred by Heck. Accordingly, the Court concludes that Plaintiff's false arrest claim was frivolous.

---

[3] Success in this action would call into question the validity of Plaintiff's conviction since if he could establish that the Defendant Officers lacked probable cause to stop him and lacked probable cause to search his person, then he would have been able to suppress the marijuana and the instant conviction would surely not have ensued.

## B. Failure to Intervene Claim against Neville

Defendants argue Plaintiff's failure to intervene claim against Neville was frivolous since "it was undisputed throughout these proceedings that [ ] Neville could not see or hear [ ] Coleman and [ ] Adams at the time of the alleged force." Record Document 112-1 at 8. Plaintiff contends he established a *prima facie* case against Neville, and it was only after discovery commenced that it was discovered Neville did not see or hear the altercation. See Record Document 114 at 10.

Generally, to prevail on a failure to intervene/bystander liability claim against an officer, the plaintiff must prove that the defendant officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act. See Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). The Court found there was no genuine dispute of material fact as to whether Neville (1) knew that Officer Coleman was violating Adams' constitutional rights or (2) had a reasonable opportunity to prevent the harm that Adams suffered, and dismissed Plaintiff's claim on summary judgment. See Record Document 64 at 20.

Although Plaintiff may have had a reasonable foundation to bring this claim against Neville prior to discovery, the Court notes that Plaintiff continued to litigate the claim after it clearly became frivolous. See Nance, 2006 WL 2338193 at *8. The evidence made it clear that once Plaintiff and Coleman turned off the main street, Neville could not see them or hear them. See Record Document 64 at 21. Additionally, the Court found that "undisputed summary judgment evidence show[ed] that [ ] Neville was preoccupied with detaining King, looking up his name for outstanding warrants, and speaking to the local

resident who offered him water while Officer Coleman was chasing Adams and arresting him." Id. at 22. There was simply no evidence pertaining to two elements required for Plaintiff's failure to intervene claim, and yet Plaintiff continued to press this claim until December 7, 2016, after the Defendants filed for summary judgment on November 11, 2016. See DeRamus v. City of Alexandria, 675 F.Appx. 408, 416 (5th Cir. 2017) (affirming district court's finding of frivolity where plaintiffs provided no evidence to support their claims, but still asserted their claims after defendant filed for summary judgment). Therefore, the Court finds Plaintiff's failure to intervene claim against Neville was frivolous.

### C. Failure to Intervene Claim against Coleman

The undisputed evidence confirmed that it was Coleman who actually used force against Adams; however, Plaintiff still asserted his failure to intervene claim against Coleman. See Record Document 2 at 8-11; Record Document 64 at 20. Defendants argue such a claim was frivolous and notes the Court's memorandum ruling language, "a claim against [ ] Coleman–the officer who actually used force–for failure to intervene is simply illogical and cannot proceed." Record Document 112-1 at 8. Plaintiff argues his claim was not frivolous because he only learned the identity of which officer used forced against him after his case was in suit and discovery had commenced.[4] See Record Document 114 at 10.

Plaintiff's argument, however, is not supported by the record or the evidence. Plaintiff's counsel obtained the case summary report prior to filing the Complaint, and the report clearly identified Coleman as the officer who chased and tackled Plaintiff. See

---

[4] "Before discovery commenced, Plaintiff had knowledge that he was stopped by two officers and chased by at least one." Record Document 114 at 10.

Record Document 112-2; 117-1. Additionally, Plaintiff in his Complaint identified Coleman as the officer who used force against Adams:

> 18. Near or on Prentiss Avenue, OFFICER COLEMAN then approached LEGEE ADAMS, by forcefully and violently grabbing LEGEE ADAMS' shoulder and then throwing LEGEE ADAMS to the ground.
>
> * * *
>
> 22. Despite hearing and acknowledging LEGEE ADAMS' statements, and aware that LEGEE ADAMS was not resisting arrest or attempting to flee, OFFICER COLEMAN violently grabbed LEGEE ADAMS' arm, which was then position below LEGEE ADAMS' body in an injured and protective position, and forcefully pulled it behind LEGEE ADAMS' back.

Record Document 2.

Plaintiff knew Coleman was the officer who chased and tackled him before filing suit. Further, Plaintiff specifically alleged it was Coleman who used excessive force against him in his Complaint. And yet, Plaintiff still asserted his failure to intervene claim against Coleman – the officer who actually used force. For these reasons, the Court finds Plaintiff's claim was frivolous.

### D. Excessive Force Claim against Neville

Defendants argue Plaintiff's inclusion of an excessive force claim against Neville, which was wholly without evidentiary support, was frivolous. See Record Document 112-1. Plaintiff believes this claim was grounded in merit at the time the Complaint was filed, as he only learned the identity of which officer used force against after discovery commenced. See Record Document 114 at 10. However, as previously discussed, Plaintiff retained the case summary report prior to filing the Complaint. This report clearly identified Coleman as the officer who chased and tackled Plaintiff. Additionally, Plaintiff's Complaint fails to even allege that Neville used any force against him. See Record

Document 2. The Court believes Plaintiff's argument is without merit and Plaintiff's inclusion of an excessive force claim against Neville was frivolous.

Even if Plaintiff's claim against Neville was not frivolous at the time the Complaint was filed, it most certainly became frivolous after discovery commenced. Plaintiff's own deposition testimony stated that only one officer, Coleman, chased him when he ran. See Record Document 21-1 at 7. Additionally, Neville stated when Plaintiff ran, he detained Aaron King until Coleman returned with Plaintiff after chasing and handcuffing him. See Record Document 21-6 at 16. However, after it became clear that Plaintiff's excessive force claim against Neville was frivolous, Plaintiff continued to litigate the issue. See Nance, 2006 WL 2338193 at *8. After Defendants asserted there was no genuine dispute of material fact as to whether Neville used excessive force, Plaintiff opposed Defendants' argument, writing more than three pages in support of a claim that was clearly frivolous. As the Court acknowledged in its Memorandum Ruling,

> [T]his section of Adams' Opposition only mentions Officer Neville in making the conclusory assertion that summary judgment is inappropriate on Adams' excessive force claim against Officer Neville. See Record Document 27-1 at 8-12. Otherwise, this section only recites the facts of the incident in question, emphasizes Officer Coleman's actions and Adams' injuries, and recites the standards for overcoming a qualified immunity defense on an excessive force claim. See id. In fact, Adams' Opposition confirms that it was Officer Coleman and not Officer Neville who ran after Adams and allegedly tackled and beat him. See id. at 10 ("Plaintiff ran for a short distance before being tackled and beaten by Defendant Coleman"). Finally, in another section of Adams' Opposition, Adams concedes that "Officer Neville, himself, did not tackle and batter Plaintiff." See id. at 13.

Record Document 64 at 18.

The Court believes Plaintiff's claim was frivolous from the outset as Plaintiff's counsel retained the case summary report prior to filing Complaint. However, assuming *arguendo* Plaintiff's claim was not frivolous when the Complaint was filed, it certainly

became so; and yet, Plaintiff continued to litigate, even after Defendants filed their motion for summary judgment. See DeRamus, 675 F.Appx. at 416. For these reasons, the Court believes Plaintiff's excessive force claim against Neville was clearly frivolous.

### E. Excessive Force Claim against Coleman

Defendants' main argument pertaining to the frivolity of Plaintiff's excessive force claim against Coleman is that "Plaintiff had presented at least three different versions of what occurred." Record Document 112-1 at 6. In this case, the Court finds that Defendants' argument is not persuasive enough to award costs and attorneys' fees under Section 1988 with regard to Plaintiff's excessive force claim against Coleman. Plaintiff was able to establish a *prima facie* case, and his claim was arguably meritorious.[5] Moreover, the Court notes this claim survived summary judgment, proceeded to a full trial on the merits, survived Defendants' motion for judgment as a matter of law, and went to the jury. All of these factors weigh heavily in the Court's decision.[6]

There was evidence that Coleman used excessive force against Plaintiff. The Court allowed a complete trial on this claim and sent it to the jury. Consequently, the Court cannot find Plaintiff's excessive force claim against Coleman was frivolous.

### F. Monell Claims against the City

Defendants assert Plaintiff presented no evidence in support of his claims and there was no legal authority to support a Monell claim based on a single incident where there was no notice, and the facts were insufficient to establish a causal connection. See

---

[5] Plaintiff presented evidence at trial that Coleman used excessive force against him during his arrest. Whether the jury disbelieved Plaintiff's testimony and credited Coleman's denial does not influence the Court's analysis. See Myers, 211 F.3d at 293.
[6] The Court notes Plaintiff's excessive force claim against Coleman meets the majority of the factors considered in the Fifth Circuit's determination of frivolity. See Myers, 211 F.3d at 292.

Record Document 112-1 at 9. Again, the Court does not find the Defendants' argument persuasive.

Plaintiff alleged facts in his Complaint and sought discovery to determine if the alleged violations of his constitutional rights were caused by a lack of training by the City. See Record Document 2 at 11-14. In City of Canton v. Harris, 489 U.S. 378, 388-90 (1989), the Supreme Court left open the possibility that a pattern of similar violations might not be necessary to show deliberate indifference "in a narrow range of circumstances," one of which is where minimal training has been offered and the duties assigned carry an obvious need for an additional or different training. Plaintiff produced the deposition testimony of Neville, Coleman, Lieutenant Jeffrey Peters, and Sergeant Johnson (the testimony indicated that Shreveport Police Department officers use a subjective standard for determining the appropriate amount of force, rather than an objective standard, thus showing officers were generally unfamiliar with the constitutional standards for the use of force) in an attempt to show there was an obvious need for additional or different training, and that the Shreveport Police Department's failure to do so amounted to deliberate indifference. See Record Document 27-1 at 16-20. The Court eventually dismissed Plaintiff's Monell claim, finding Plaintiff's evidence insufficient to prove deliberate indifference. See Record Document 64 at 25-28. The Court's dismissal does not categorize Plaintiff's claim as frivolous, however.

The district court's analysis in Crump-Richmond v. Arambula, 2007 WL 1112685 (D. Nev. 2007), is instructive. There, the court granted a motion for summary judgment against plaintiff's Monell claims in an excessive force case against an officer due to insufficient evidence of policy or inadequate training; however, this insufficiency did "not

mean the claims were groundless, vexatious, frivolous, or brought merely to harass or embarrass" the defendant. Id. at *2. The court reasoned as follows:

> The action against the officer is based upon actions taken within the scope of the officer's duties. It is not unreasonable to assume that the officer was acting in accordance with the policies and procedures he had been taught to follow. Thus, assuming there may likely be violations based upon Monell is not unreasonable, groundless or without foundation. The fact that Plaintiff was unable to discover any policies or training (or inadequate training) which resulted in any excessive force by the officer does not make the original assumption frivolous. It was merely mistaken, and not sufficient grounds to grant an award of fees pursuant to Section 1988.

Id.

Here, the Court granted summary judgment against Plaintiff's Monell claims based on Plaintiff's inability to meet the stringent standard of deliberate indifference. Plaintiff provided evidence for his Monell claim. The Court's ruling that Plaintiff's evidence was insufficient does not make his claim unreasonable or frivolous and is not sufficient to grant an award of fees pursuant to Section 1988.

### G. Sanctions Pursuant to 28 U.S.C. § 1927

Defendants do not specifically analyze their claim for sanctions under Section 1927 in either memorandum, instead they conclude Plaintiff "unreasonably and vexatiously multiplied these proceedings" throughout their argument. See Record Document 112-1. After reviewing the case record in its entirety, the Court does not believe sanctions under Section 1927 are appropriate in this instance.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 does "not distinguish between winners and losers or between plaintiffs and defendants. The statute is designed to curb litigation abuses by counsel, irrespective of the merits of the client's claims or defenses." Manton v. Strain, 2011 WL 1000964, *6 (E.D. La. 2011), citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). "An award of attorney's fees under 28 U.S.C. § 1927 is considered 'punitive in nature' and should only be awarded if a party 'multiplies the proceedings ... unreasonably and vexatiously.'" Manton, 2011 WL 1000964 at *6, quoting Bryant v. Military Dept. of Miss., 597 F.3d 678, 694 (5th Cir. 2010); see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994) (noting that Section 1927 must be strictly construed so as "not to dampen the legitimate zeal of an attorney in representing his client"). This standard, which "focuses on the conduct of the litigation and not on the merits, requires clear and convincing evidence that every facet of the litigation was patently meritless and evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." Manton, 2011 WL 1000964 at *6 (internal quotations omitted). "Punishment under this section, however, is 'sparingly applied, and except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in ….'" Butler v. Rapides Foundation, 365 F.Supp.2d 787, 796 (W.D. La. 2005), quoting Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 535 (5th Cir.1996). "Accordingly, the emphasis in Section 1927 is that personal liability of counsel is only for the excess costs, expenses, and fees where counsel both "unreasonably and vexatiously" multiplies the litigation." Butler, 365 F.Supp.2d at 797.

The course of Plaintiff's litigation, filings and conduct with this Court, considered in their entirety, were not unwarranted, unreasonable or vexatious. On November 5, 2015,

Plaintiff filed their Complaint. See Record Document 2. On January 4, 2016, Plaintiff filed a joint 26(f) Report with defense counsel. See Record Document 7. Plaintiff has maintained each deadline set by this Court in conjunction with their 26(f) Report and motion to extend granted by this Court. This Court only required three status conferences and one pre-trial conference to address merit based issues presented by counsel. Prior to those filed documents relating to trial only twenty documents were filed by both parties with this Court. See Butler v. Rapides Foundation, 365 F.Supp.2d 787, 797 (W.D. La. 2005) (Where Plaintiff's counsel filed only twenty-three documents total, only five of which were generated by Plaintiff, the court found "sanctions under § 1927 for personal liability inappropriate."). Upon the Court's grant of motion for summary judgment on some claims, Plaintiff respected the Court's decision and made no further pursuit to litigate those claims. At trial, Plaintiff presented a concise case in chief that lasted one and one-half days. See Record Documents 102 and 103. Plaintiff has pursued this case with full respect and compliance with those duties owed to the court, and without improper motive or bad faith. Accordingly, the Court finds sanctions against Plaintiff's counsel under Section 1927 inappropriate in this matter.

## CONCLUSION

The Court finds that given established case law, the facts of the case known by Plaintiff and his counsel at the time Plaintiff filed his action and those learned during discovery, Plaintiff's claims of false arrest, failure to intervene, and his excessive force claim against Neville were frivolous. However, the Court finds Plaintiff's claim of excessive force against Coleman and his Monell claim were not frivolous and were reasonable when filed and litigated. Therefore, the Court will exercise its discretion and decline an award

of Defendants' fees for the frivolous claims Plaintiff filed in this case. Instead, the Court will award Defendants' costs. The Court believes this award to be appropriate especially in light of the frivolity of Plaintiff's false arrest claim, failure to intervene claim against Coleman, and his excessive force claim against Neville. Accordingly, the Defendants' motion for attorneys' fees and costs is **GRANTED IN PART** and **DENIED IN PART**. With respect to costs, the motion is **GRANTED**. With respect to attorneys' fees, the motion is **DENIED**.

Pursuant to Local Rule 54.3, Defendants are ordered serve on Plaintiff's counsel and file with the clerk a motion to tax costs on the forms prescribed by the court, together with a certification that the items are correct and that the costs have been necessarily incurred.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of June, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT